**Celia M. Butterfield et al., Appellants, v. Ferdinand
Munch, Executor, Appellee.**

**Gen. No. 5,774.**

EXECUTORS AND ADMINISTRATORS, § 529*—*when executor cannot be
charged with assets unaccounted for.*   On appeal from an order of
the Circuit Court failing to charge an executor with an inventory
of $2,300 claimed by beneficiaries under the will as having been in-
vested by testator in city improvement bonds, evidence *held* insuf-
ficient to show that the executor ever knew what disposition was
made of bonds or that he ever appropriated the same to his own
use.

Appeal from the Circuit Court of Will county; the Hon. CHARLES
B. CAMPBELL, Judge, presiding.   Heard in this court at the April
term, 1913.   Affirmed.   Opinion filed October 17, 1913.

D. R. ANDERSON, for appellants.

ANTRAM & HUTCHINSON, for appellee;  BARR, MC-
NAUGHTON & BARR, of counsel.

MR. JUSTICE CARNES delivered the opinion of the
court.

This case began in the Probate Court of Will county
by six objections filed by beneficiaries under the will
of Xavier Munch alleging that the executor, Ferdi-
nand Munch, had failed to inventory various items of

*See Illinois Notes Digest, Vols. XI to XIV, same topic and section number.

personal assets of the deceased. There was an order of the Probate Court that the executor be charged with and inventory $2,300 of Joliet City Improvement bonds, and a debt from himself to deceased of $50, two of said items, from which order the executor, only, appealed to the Circuit Court, expressly limiting his appeal in his bond filed to those two items. There was on a hearing in the Circuit Court an order that he be charged with, and inventory, only said item of $50, and that all other objections to his inventory be overruled. The objectors only appeal from that order, therefore the only matter before us is whether the executor should have been charged with the item of city bonds. *Bache v. Ward*, 225 Ill. 320.

Xavier Munch died September 7, 1911; his will was executed in 1883; Ferdinand Munch, his oldest son, was then named as executor. Deceased was advanced in years and had left his farm in 1894, thereafter residing in the city of Joliet, retired from active business. The son Ferdinand also resided there and from time to time assisted his father, who was not well educated, in the transaction of the simple business incident to his life as a retired farmer and the care of thirty or forty thousand dollars of property. The father apparently during his lifetime continued to repose in his son that confidence which he manifested so long before his death, in choosing him as the executor of his will. In February, 1906, deceased sold his farm for $36,000, of which he was to receive two-thirds and his wife one-third. The money was in part paid at the time of the purchase, and in part in instalments thereafter, and was in part divided by deceased among his thirteen children and two children of a deceased child, and in part invested in Joliet City Improvement bonds and in loans. This money was the principal subject of investigation at the trial. On the hearing in the Circuit Court great latitude was allowed in the introduction of evidence as to the acquisition and disposition of testator's property for many years before his

death, and the connection of Ferdinand Munch therewith. Testator's bank account was in evidence and much testimony heard as to how and when he obtained various sums of money shown in the record of deposits, and what he did with various sums of money shown in the record of withdrawals by checks, and by memoranda on stubs of his check books. The record of 562 pages is reduced in the abstract to 158 pages, mostly devoted to the evidence heard in the Circuit Court. It is not practicable to extend this opinion by an analysis of the evidence and an attempted explanation of the various computations made by counsel from the figures contained in the accounts and statements. It is sufficient to say that it cannot be determined what disposition the testator made of all the money he received during the last years of his life; there is enough unaccounted for to cover two thousand three hundred dollars of bonds. He had more than that amount of Joliet City Improvement bonds and it is not clear what became of them or their proceeds. They could have been cashed at the bank and in its ordinary course of business no record kept of the transaction. The bonds were kept in a safety deposit box owned in common by testator and Ferdinand Munch; each of them had access to it, but so far as known, testator never visited it alone. Ferdinand assisted his father in writing checks and in various other ways, and while not his agent was familiar with his business; it is natural to suppose that he would be able to state what became of the bonds. He was called as a witness by the objectors and very thoroughly examined concerning these bonds and many other matters touching testator's property, and stated that he did not know what disposition was made of them, they were not in the safety deposit box at the time of his father's death, and he denied that he had at any time taken them. This was competent evidence and bound the objectors unless it was shown by other evidence to be untrue. We find nothing in the record to warrant the conclusion

that Ferdinand Munch ever appropriated these bonds to his own use. Such an act cannot be presumed on suspicion and slight evidence. We see no ground for reasonable suspicion that Ferdinand Munch acted criminally or in bad faith in the matter, more than always would be, found where there is property lost or unaccounted for, and a clerk or trusted son, familiar with the business, could not explain the matter. The judgment of the trial court is affirmed.

*Affirmed.*